# Exhibit J

Page 1

```
 1
 2     UNITED STATES DISTRICT COURT
 3     FOR THE DISTRICT OF COLUMBIA
 4     ------------------------------------------ x
       STATE OF NEW YORK, et. al.,
 5
                         Plaintiffs,
 6
            -against-
 7
       DONALD J. TRUMP, in his official capacity as
 8     President of the United States, et al.,
 9                       Defendants.
10     ------------------------------------------ x
11
12
13               October 16, 2020
                 9:02 a.m.
14
15
16
17
18          VIRTUAL ZOOM DEPOSITION of ROBERT
19     JUSTIN GLASS, taken pursuant to Notice, held
20     via Zoom before Fran Insley, a Notary Public of
21     the States of New York and New Jersey.
22
23
24
25
```

Page 2

```
 1
 2  A P P E A R A N C E S:
 3     BURGESS, BERG & ANDROPHY
 4        Attorneys for Plaintiffs in
           Richardson v Trump Case
 5
           120 West 45th Street, 38th Floor
 6         New York, New York 10036
 7     BY: EMILY BURGESS, ESQ.
           Phone: (646) 766-0080
 8         eburgess@bafirm.com
 9
10     NJ OFFICE OF THE ATTORNEY GENERAL
11        Attorneys for Defendants
12        P.O. BOX 112
          Trenton, New Jersey 08625-0112
13
       BY: ESTELLE A. BRONSTEIN, ESQ.
14        -and-
          MELISSA MEDOWAY, ESQ.
15        Phone: (609) 292-4925
          estelle.bronstein@law.njoag.gov
16
17     STATE OF NEW YORK, OFFICE OF THE
       ATTORNEY GENERAL
18
19        28 Liberty Street
          New York, New York 10028
20
       BY: ELENA GOLDSTEIN, ESQ.
21        -and-
          MORENIKE FAJANA, ESQ.
22        Phone: (212) 453-0786
          morenike.fajana@ag.ny.gov
23
24
25
```

Page 3

```
 1
 2  APPEARANCES CONT'D:
 3     ATTORNEY COMMERCIAL AND APPELLATE
       LITIGATION
 4
          Attorneys for United States
 5         Postal Service
 6         475 L'Enfant Plaza, SW
           Washington, DC 20260
 7
       BY: STEPHAN J. BOARDSMAN, ESQ.
 8        -and-
          MICHAEL WEAVER, ESQ.
 9        Phone: (202) 268-8515
          stephan.j.boardsman@usps.gov
10
11     COVINGTON & BURLING, LLP
12        Attorneys for Plaintiffs Vote
          Forward v. DeJoy
13
          The New York Times Building
14        620 Eighth Avenue
          New York, New York 10018-1405
15
       BY: SARAH SUWANDA, ESQ.
16        Phone: (212) 841-1247
          SSuwanda@cov.com
17
18     U.S. DEPARTMENT OF JUSTICE, CIVIL
       DIVISION
19
          Attorneys for Defendants
20
          1100 L Street NW
21        Washington, D.C. 20005
22     BY: JOSEPH BORSON, ESQ.
          Phone: (202) 514-5108
23        joseph.borson@usdoj.gov
24
25
```

Page 4

```
 1
 2              I N D E X
 3  WITNESS         EXAMINATION BY      PAGE
 4  ROBERT JUSTIN GLASS  MS. MEDOWAY     5
 5                       MS. SUWANDA    164
 6
 7  ------------E X H I B I T S----------------
 8     DESCRIPTION               PAGE
 9  Exhibit 1  Letter dated 7/30/20    61
10  Exhibit 2  Letter dated 9/21/20    75
11  Exhibit 3  Memo dated 9/25/20      98
12  Exhibit 4  Supplemental Declaration  118
13  Exhibit 5  10/2020 memo            126
14  Exhibit 6  Excel spreadsheet       152
15
16     (EXHIBITS RETAINED BY MS. MEDOWAY)
```

Page 5

```
 1              Glass
 2  R O B E R T  J U S T I N  G L A S S, the
 3  Witness herein, having first been duly sworn by
 4  the Notary Public, was examined and testified
 5  as follows:
 6  EXAMINATION BY MS. MEDOWAY:
 7     Q. Good morning, Mr. Glass. We are now
 8  on the record in New York versus Trump
 9  1:20-cv-02340 in the District Court for the
10  District of Columbia. The date is October 16
11  and it is now 9:02 a.m.
12         Mr. Glass, could you begin by
13  stating your full name and your work address,
14  please?
15     A. Yes, Robert Justin Glass. I go by
16  Justin. My work address is 475 L'Enfant Plaza
17  Southwest, Room 6913, Washington, D.C.
18     Q. Great. Well, good morning,
19  Mr. Glass. My name is Melissa Medoway and I am
20  a Deputy Attorney General at the New Jersey
21  office of the Attorney General. We also have
22  counsel -- there is another counsel from my
23  office on the line as well if she could
24  introduce herself?
25     MS. BRONSTEIN: Good morning.
```

Page 114

Glass

2  that we develop.
3    Q.  Is this something that ballot
4  monitors, the USPS ballot monitors, would be
5  tracking?
6    A.  Not really, no.
7    Q.  So who would be responsible for
8  ensuring that this is, in fact, taking place,
9  that election mail received after the critical
10 entry time is processed in advance to the
11 extent possible as if it arrived prior to the
12 critical entry time?
13   A.  The local manager.
14      MS. MEDOWAY:  Estelle, could you
15   scroll down to the bottom of, I believe
16   page -- after number 4, so those last
17   several paragraphs on page 2.
18      Can you go up a little bit, Estelle?
19   Right there.
20   Q.  I want to now talk about some of the
21 information contained in these concluding
22 paragraphs, Mr. Glass.  What does the term
23 extraordinary measures mean to the United
24 States Postal Service with regard to election
25 mail?

Page 115

Glass

2    A.  It -- so in these instances, in what
3  you'll see there in the second paragraph, they
4  are, but not limited to, expedited handling,
5  extra deliveries, special pickups, you kind of
6  see in the parentheses there some of those
7  specific things around an expedited handling
8  that we do.
9       We, as needed, when we have election
10 officials entering ballots to voters very late,
11 we will typically go through these
12 extraordinary measures like upgrading that mail
13 to priority mail express or even delivering
14 ballots on Sundays, going around and doing
15 special deliveries, like after the normal
16 routes are done or in addition to the normal
17 routes and then on Election Day, at least half
18 the states are what we refer to as ballot
19 enhanced states.  They require ballots to be
20 back by a certain time on Election Day.
21      We will do things like on Election
22 Day going through our collection mail, finding
23 ballots and sending folks out to Boards of
24 Election to do everything we can to try to get
25 those last minute votes into the Boards of

Page 116

Glass

2  Elections hands.
3    Q.  What does this September 25, 2020
4  memo reflect with regard to extraordinary
5  measures and what the United States Postal
6  Service will do with respect to extraordinary
7  measures going forward?
8    A.  That we will continue to do the
9  things that we have done in the past around
10 that and it's clarifying that that is expected
11 to continue and the field managers are
12 instructed to use whatever means they deem
13 necessary to connect these last minute ballots.
14   Q.  Under this September 25, 2020 memo,
15 who is responsible for approving the use of
16 extraordinary measures?
17   A.  The local management team.
18   Q.  Does the United States Postal
19 Service plan to track the use of extraordinary
20 measures between October 26th and November 4th?
21   A.  We will get reports of it and we
22 will be aware of the different things that will
23 be going on.  Tracking each instance of that is
24 going to be very difficult just due to the
25 scope and scale, but we will be tracking and

Page 117

Glass

2  aware of many of the efforts.
3    Q.  Mr. Glass, do you know whether there
4  will be any consequences for not approving
5  extraordinary measures following the issuance
6  of this memo?
7    A.  I am not aware if there will be
8  consequences for someone not doing that.  I
9  wouldn't be able to speak to that.
10   Q.  Is this something that the ballot
11 monitors would be monitoring, the use of
12 extraordinary measures?
13   A.  Not particularly.  That is not their
14 role, but they will probably participate in the
15 extraordinary measures.
16   Q.  Mr. Glass, are you aware of any
17 extraordinary measures not being approved
18 during the 2020 primary process?
19   A.  No, everything was approved that I'm
20 aware of.
21   Q.  In all of the time that you've been
22 involved with election mail, are you aware of
23 any extraordinary measures not being approved?
24   A.  No.
25      MS. MEDOWAY:  Estelle, could you

Page 166

Glass

1
2 is because not all ballots use intelligent bar
3 codes?
4    A.   Yes.
5    Q.   Or is there some other reason why it
6 would only be some data?
7    A.   Yes.
8    Q.   And what would that reason be?
9    A.   Because we are only tracking it on
10 ballots, not all other election mail.
11    Q.   I see.  So only with respect to
12 ballots?
13    A.   That's correct.
14    Q.   Can you explain how USPS would
15 monitor and enforce compliance with the
16 policies that are set forth in this
17 September 25th memo that was marked as
18 Exhibit 3 in this deposition for --
19        MR. BORSON:  Objection.  I'm sorry.
20 I apologize.  Objection.  Compound.
21    Q.   I can rephrase.  Can you explain how
22 you monitor and enforce compliance with policy
23 of postmarking of election mail?
24    A.   Yes, we monitor through the data
25 that we are seeing, but we marry that up

Page 167

Glass

1
2 against the actual feedback from the ballot
3 monitors that we have.
4        So looking at observation in
5 conjunction with the data and we provide daily
6 feedback on that to our plant managers and
7 division directors.
8    Q.   So just so we are clear, the data
9 you are referring to is what specifically?
10    A.   The data that I mentioned where we
11 are looking at the hits on the intelligent mail
12 bar codes in making assumptions based on the
13 operational hits on those mail pieces.
14    Q.   What do you mean by operational
15 hits?
16    A.   Each of our machines, when they are
17 running, they are running on an operation
18 number and based upon that operation number,
19 that is how we make assumption as to whether
20 that received a postmark or not.
21    Q.   Can you explain -- I think you said
22 that you would marry up the data with feedback
23 from ballot monitors.  Can you explain that
24 process?
25    A.   Yes.  Whenever we are looking for

Page 168

Glass

1
2 feedback on based upon what the data is telling
3 us directionally, we ask for their feedback of
4 what they were observing, whether mail that was
5 getting one specific say operational hit before
6 another, whether those pieces had postmarks or
7 not.
8    Q.   When you mean -- when you get this
9 feedback, is it feedback that comes voluntarily
10 from those giving it to you or is this
11 something that you all checked in with the
12 feedback?
13    A.   Both.
14    Q.   So it's directionally both ways in
15 the feedback loop?
16    A.   That's correct.
17    Q.   How often do you receive that
18 feedback data?
19    A.   We are getting feedback on a daily
20 basis.  It may not be every plant every day,
21 but we are getting feedback on a daily basis
22 from various plants across the country and we
23 have weekly cadences with our division
24 directors to talk about all of their plants
25 within their divisions.

Page 169

Glass

1
2    Q.   Understood.  Thank you.
3        MS. SUWANDA:  That's all the
4 questions I have.
5        MS. MEDOWAY:  We don't have any
6 other questions.  Does counsel for
7 Mr. Glass have any questions?
8        MR. BORSON:  No.  Assuming there are
9 no further questions from the Plaintiffs,
10 there is no redirect from the Defendants.
11        MS. MEDOWAY:  We have nothing
12 further.
13        MR. BORSON:  We reserve the right to
14 read and sign.
15        MS. MEDOWAY:  Thank you, Mr. Glass
16 for all of your time today.  We appreciate
17 it.
18        THE WITNESS:  Thank you.
19        (Time noted:  3:28 p.m.)

43 (Pages 166 - 169)

Page 170

1
2
3           C E R T I F I C A T E
4       I, FRAN INSLEY, hereby certify that the
5   Deposition of ROBERT JUSTIN GLASS was held
6   before me on the 16th day of October, 2020;
7   that said witness was duly sworn before the
8   commencement of testimony; that the testimony
9   was taken stenographically by myself and then
10  transcribed by myself; that the party was
11  represented by counsel as appears herein;
12      That the within transcript is a true
13  record of the Deposition of said witness;
14      That I am not connected by blood or
15  marriage with any of the parties; that I am not
16  interested directly or indirectly in the
17  outcome of this matter; that I am not in the
18  employ of any of the counsel.
19      IN WITNESS WHEREOF, I have hereunto set
20  my hand this 19th day of October, 2020.
21
22           _____
             FRAN INSLEY
23
24
25

Page 171

1   Joseph Borson, Esq.
2   joseph.borson@usdoj.gov
3            October 19, 2020
4   RE:   New York v. Trump
5     10/16/2020, Justin Glass (#4293240)
6     The above-referenced transcript is available for
7   review.
8     Within the applicable timeframe, the witness should
9   read the testimony to verify its accuracy. If there are
10  any changes, the witness should note those with the
11  reason, on the attached Errata Sheet.
12    The witness should sign the Acknowledgment of
13  Deponent and Errata and return to the deposing attorney.
14  Copies should be sent to all counsel, and to Veritext at
15  cs-ny@veritext.com.
16
17   Return completed errata within 30 days from
18  receipt of testimony.
19   If the witness fails to do so within the time
20  allotted, the transcript may be used as if signed.
21
22           Yours,
23           Veritext Legal Solutions
24
25

Page 172

1  New York v. Trump
2  Justin Glass (#4293240)
3           E R R A T A  S H E E T
4  PAGE_____ LINE_____ CHANGE_____
5  _____
6  REASON_____
7  PAGE_____ LINE_____ CHANGE_____
8  _____
9  REASON_____
10 PAGE_____ LINE_____ CHANGE_____
11 _____
12 REASON_____
13 PAGE_____ LINE_____ CHANGE_____
14 _____
15 REASON_____
16 PAGE_____ LINE_____ CHANGE_____
17 _____
18 REASON_____
19 PAGE_____ LINE_____ CHANGE_____
20 _____
21 REASON_____
22
23 _____  _____
24 Justin Glass                    Date
25

Page 173

1  New York v. Trump
2  Justin Glass (#4293240)
3         ACKNOWLEDGEMENT OF DEPONENT
4    I, Justin Glass, do hereby declare that I
5  have read the foregoing transcript, I have made any
6  corrections, additions, or changes I deemed necessary as
7  noted above to be appended hereto, and that the same is
8  a true, correct and complete transcript of the testimony
9  given by me.
10
11 _____  _____
12 Justin Glass                    Date
13 *If notary is required
14        SUBSCRIBED AND SWORN TO BEFORE ME THIS
15        _____ DAY OF _____, 20___.
16
17
18        _____
19        NOTARY PUBLIC
20
21
22
23
24
25