**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VOTE FORWARD, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> LOUIS DEJOY, in his official capacity as the Postmaster General; and the UNITED STATES POSTAL SERVICE, <br><br> *Defendants*. | Civil Case No. 1:20-cv-02405 |

**REPLY IN SUPPORT OF PROPOSED ORDER**

At yesterday's conference, the Court indicated that it was inclined to grant Plaintiff's request to enter an order designed to ensure that all U.S. Postal Service (USPS) facilities are in fact implementing the policies that their own witnesses testified yesterday were mandatory to ensure that all ballots that can be delivered in time to be counted this election will be delivered. This order is necessary because: (1) USPS has not provided written guidance establishing the mandatory nature of a number of its extraordinary procedures (referring to them as "authorized," but not "mandatory" or "required"), and (2) USPS's own data shows that thousands of ballots are taking far longer than they should to be delivered. *See, e.g.*, ECF 33-11 at 2 (USPS Oct. 20 Memo) ("Below is a list of some examples of the types of extraordinary measures that are authorized to be used."); ECF 33-10 at 11 (stating that "[f]rom October 26 through November 24, 2020, ballots *may* be manually separated and moved by air or according to Priority Mail Express delivery standards regardless of paid class."); ECF 51-4 at 16-18 (showing that, on October 30, the latest date for which data are available, ballot process scores for numerous districts show that more than 10% of ballots from voters to elections officials are being

1

processed beyond the service standard, and that, in 7 districts, over 20% of voters' ballots are being processed in this untimely manner).

Consistent with the Court's instructions at the conference, Plaintiffs filed a proposed order to require plant managers to provide short certifications that they are taking the extraordinary measures that USPS has itself identified to ensure that ballots are timely delivered. ECF No. 54-1. In response, Defendants filed a lengthy response that largely relitigates issues that the Court has previously adjudicated. Defendants identify only two areas of purported concern that the proposed order could be confusing, both of which are easily resolved with small edits to the proposed order—edits Plaintiffs' counsel would have made had Defendants' counsel provided feedback last night.

First, Defendants assert that "[t]he Proposed Order, as drafted, could be read to require the Postal Service to manually sort the mail at the originating plant to identify ballots." Defs. Response at 2, ECF 55," and note that "[m]anual sortation and postmarking would be much slower and less effective." *Id*. at 3. But nothing in the text of the Proposed Order suggests or requires "manual sortation and postmarking." Instead, the Proposed Order specifically points to extraordinary measures "*identified by USPS management*" to ensure that ballots are "immediately identified, postmarked, and processed." Proposed Order ¶ 1, ECF 54-1 (emphasis added). There is no logical reason why this instruction should lead to confusion or inconsistent processing. In any event, the supposedly ambiguous language can be edited out of the Proposed Order, as reflected in the attached revised proposed order.

Second, Defendants note that "the Proposed Order requires that 'Election Mail that has a destination in a different District [must be] processed as Express Mail,'" and they assert that in "some situations, this might be slower than other delivery methods, particularly if the districts

are close in proximity." Defs. Response at 2, ECF 55. That point is easily addressed by adding the following bolded language to the end of paragraph 1(b), as shown in the attached revised proposed order: "Election Mail that has a destination in a different District is processed as Express Mail, **unless a different delivery method would be faster, in which case the faster method should be used.**"

Importantly, the Proposed Order tracks precisely what USPS's senior executives testified to on Saturday. During his direct examination, Mr. Barber testified that "where it is not a local ballot, then we have a procedure in place where we would identify that and  sort it to a express mail network in an attempt to get it to its final destination as quickly as possible." Oct. 31, 2020 Hr'g Tr. at 3:16-4:2 (attached as Exhibit 1); *see also id*. at 14:21-15:19 ("So the example would be last night, part of our operation was if you receive a ballot, for example, that is going from Miami and it's going to Seattle. Well, there's no way to recover that other than if you put it -- extract it, put it in an express mail bag to fly it, then it still has a chance to make it."); 17:4-7 ("Q The express mail, the rescue and the placement into express mail, is that something that's also mandatory for every processing facility?  A That is. Yes.").

Finally, Defendants belatedly—and incorrectly—assert that the relief Plaintiffs requests raises different issues than the issues raised in Plaintiffs' complaint. Defs. Response at 4, ECF 55. Plaintiffs' complaint challenged policy changes implemented this summer that led to widespread mail delays specifically because it would lead to election ballots arriving too late to be counted—thereby disenfranchising voters. *See generally* ECF 15.  Although this Court required Defendants to rescind those changes in a series of preliminary injunctions beginning September 27, Defendants 30(b)(6) representative acknowledged as recently as October 15 that no changes had been made in response to the Court's injunctions.  *See* ECF 33-1 at 5. And, even

today, Defendants' own data show that late and extra trips are running at a fraction of their pre-July levels. *See* ECF 51-1 (documenting late and extra trips); ECF 37 at 6 (showing pre-July levels). Defendants' failures to comply with this Court's injunctions, and their failure to fix the widespread delays in service resulting from those failures, have required the Court to enter more targeted relief to ensure timely delivery of ballots.  Indeed, the potential that ballots would not be counted and voters would be disenfranchised was the basis for the "irreparable harm" that led to the Court's the preliminary injunction in this case.  *See* ECF 32 at 35-41.

This further relief is fully consistent with the principle that the "court's power to enforce its own injunctions is broad, particularly where—as here—the enjoined party has, in the past, failed to fully comply with the court's earlier orders." *Nat'l Law Center on Homelessness and Poverty v. U.S. Dep't of Veterans Affairs*, 842 F. Supp. 2d 127, 129 (D.D.C. 2012) (citing cases); *see also id.* at 131 (noting that "a federal court has broad discretion in using its inherent equitable powers to ensure compliance with its orders" and discussing cases); *Rothenberg v. Ralph D. Kaiser Co., Inc.*, 200 B.R. 461, 463 (D.D.C. 1996) ("The equity powers of courts are quite broad when necessary to enforce lawful orders."). It is also fully consistent with the issues raised in Plaintiffs' complaint. *See generally* ECF 15.

November 1, 2020                           Respectfully submitted,

   */s Shankar Duraiswamy*_____
Shankar Duraiswamy
Habin Chung
Megan C. Keenan
Virginia Williamson
Sarah Suwanda
James Smith
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000

sduraiswamy@cov.com
hchung@cov.com
mkeenan@cov.com
vwilliamson@cov.com
ssuwanda@cov.com
jmsmith@cov.com

Robert D. Fram
Diane Ramirez
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
(415) 591-6000
rfram@cov.com
dramirez@cov.com

John Fraser
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000
jfraser@cov.com

*Counsel for Plaintiffs*