UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VOTE FORWARD, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> LOUIS DEJOY, in his official capacity as the Postmaster General; and the UNITED STATES POSTAL SERVICE, <br><br> *Defendants*. | Civil Case No. 1:20-cv-02405 |

**NOTICE OF PLAINTIFFS' PROPOSED ORDER**

Pursuant to the oral Order issued by the Court, Plaintiffs submit the attached Proposed Order. Plaintiffs sent a draft of the Proposed Order to Defendants but as of the time of this filing, have not heard back from Defendants. Given the 3:00 p.m. deadline ordered by the Court, Plaintiffs are submitting this Notice, but will continue efforts to confer with Defendants by their 3:30 p.m. deadline for submitting a response.

Plaintiffs state below their position on the paragraphs of the Proposed Order that may be in dispute.

**I.      Paragraph 1**

Defendants' daily report on Election Mail processing scores includes data on the volume of ballots that were processed in a given District and exited the processing system for delivery on a given day. However, the data does not show what number of those ballots were delivered *in that District* as opposed to being sent from that District and delivered elsewhere.

Plaintiffs request that Defendants produce data on daily processing scores for election ballots that allow the parties and the Court to determine whether the return ballots identified for a

given District are ballots that originated in that district, had a destination in that district, or both. This data is highly relevant to this case for several reasons.

*First*, Plaintiffs' claims in this case—and the preliminary injunction that the Court granted—are predicated on the risk that USPS' recent operational changes and associated mail delivery delays would cause ballots to be delivered after the relevant state deadline, and therefore too late to be counted. The data that Plaintiffs seek is directly probative of that question. It will allow Plaintiffs to match the processing delays for ballots with the relevant deadline in the state to which those ballots have been sent. Given the variation in state deadlines for receipt of ballots, this is significant to understanding whether a ballot that was not timely processed was nonetheless delivered by the relevant state deadline or, instead, was delivered after the relevant state deadline.

*Second*, the data will help the parties and Court assess the need for any targeted relief with respect to certain facilities in certain states that continue to accept mail ballots. Specifically, it will allow the parties to determine whether processing delays attributed to particular Districts are attributable solely to that District—which would be the case if the ballots were both sent and received from that District—or whether they may be the result of delays at other facilities from which the ballot originated or to which the ballot was sent.

*Third*, the production of this data for November 4-6, 2020, in particular, will better allow the parties and the Court to assess the effects of Defendants' non-compliance with the Court's Election Day order requiring Postal Service Inspectors to supervise a sweep of certain facilities that would ensure that any outstanding ballots were delivered by Election Day. The data will show whether ballots at a particular facility were delivered late despite having arrived at that facility before Election Day.

Defendants' suggestion that it would be unduly burdensome to produce this data lacks merit. Plaintiffs note that they initially asked for this data on Friday, October 30, including it in a proposed order that was sent to Defendants that day. Defendants never responded to this provision of Plaintiffs' proposed order. Since then, Plaintiffs have reached out to Defendants numerous times to ask that this data be included in the daily Election Mail report. Defendants have noted that they continue to look into this issue, but have not provided any substantive response over the past week. And although Plaintiffs advised Defendants that they intended to raise the issue at today's hearing, Defendants were still unable to explain why it would be burdensome to produce the requested information.

Furthermore, as noted at today's hearing and as reflected in paragraphs 2 and 3 of Plaintiffs' Proposed Order, Plaintiffs are prepared to scale back significantly many of the other USPS reporting requirements created by the Court's recent orders. That includes: daily processing scores for all First-Class Mail and Marketing Mail (though Plaintiffs still request weekly processing scores for these categories on a timely basis), daily reporting of processing scores for outbound ballots (*i.e.*, blank ballots sent to voters rather than completed ballots returned by voters), daily processing scores for non-ballot election mail, daily explanations of low processing scores for underperforming Districts, and reports produced to Congress, other courts, and other litigants. This should substantially reduce the daily reporting burden on Defendants. In return, simply differentiating the District-specific data to identify the ballots that originated in a given District, were delivered there, or both, is an exceedingly modest request.

## II.   Paragraphs 4-5

Fifteen states have extended ballot receipt deadlines after today. USPS processing facilities in eight of those states have had relatively low processing scores for Inbound Ballots (i.e., ballots returned by voters to election officials)—including processing scores of less than 90

percent for ballots delivered just yesterday. Accordingly, Plaintiffs ask that Defendants document with the Court their plans for ensuring that these facilities are prepared to collect and deliver all ballots in their facilities to relevant boards of elections on the relevant state deadline. This requirement is identical to one of the provisions that was included in the Court's November 5 Order for USPS processing facilities in North Carolina and Pennsylvania.

Moreover, this request is consistent with what USPS witnesses have said their processing plants should be doing—coordinating with local boards of elections for deadline day deliveries—and thus imposes no operational burdens or requirements beyond what USPS has already said it expects to do. The request simply seeks to ensure that these coordination efforts have been made by requiring USPS to document them in a Court filing.

November 6, 2020                                         Respectfully submitted,

                                        */s Shankar Duraiswamy*
Shankar Duraiswamy
Megan C. Keenan
Virginia Williamson
Sarah Suwanda
James Smith
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
sduraiswamy@cov.com
mkeenan@cov.com
vwilliamson@cov.com
ssuwanda@cov.com
jmsmith@cov.com

Robert D. Fram
Diane Ramirez
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
(415) 591-6000
rfram@cov.com
dramirez@cov.com

John Fraser
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000
jfraser@cov.com
*Counsel for Plaintiffs*