UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**Vote Forward**, *et al*,

Plaintiffs,

**v.**

**DeJoy**, *et al.*,

Defendants

Civil Action No. 20-cv-2405-EGS

### RESPONSE TO PLAINTIFFS' PROPOSED ORDER

As an initial note, the Postal Service is still conferring with data and operational experts regarding the text of Plaintiffs' Proposed order, which they only received at 2:15 p.m. In light of the need to confirm operational details, Defendants respectfully request the opportunity to continue to confer, and anticipate being able to submit a further update by 4:30 p.m. Defendants nonetheless have identified several general issues with Plaintiffs' Proposed Order.

For over a week before the November 3, 2020 election, and even a few days thereafter, Plaintiffs have demanded, and the Postal Service has produced, multiple forms of data over the receipt, processing, and delivery of ballots—all on a daily basis. Plaintiffs have also demanded, and the Court has ordered, that the Postal Service institute additional measures—over and above the extraordinary Election Mail measures the Postal Service already adopted—requiring a "sweep" of postal plants in search of stray ballots, and requiring the Postal Service to confirm that its facilities are prepared to deliver ballots to relevant Boards of Elections. Plaintiffs' requests for data and additional operational measures, it appears, were aimed at facilitating the processing and delivery of ballots for the November 3, 2020 election.

November 3, 2020 has now passed. And although some States have extended the deadline for receiving mail-in ballots that were postmarked by election day, those extended deadlines have or will soon pass; indeed, today is the extended ballot receipt deadline for five States. Nevertheless, Plaintiffs now insist that the Postal Service produce additional data on a daily basis, and also require certain postal processing facilities to make additional arrangements with local Boards of Elections ("BOEs")—all starting four days *after* Election day. Plaintiffs' request would impose yet another burden on the Postal Service, and would result in data productions, and operational efforts, of limited utility at this juncture. The Court should decline to enter the components of Plaintiffs' proposed order that would impose these new requirements.

First, it is unclear why any of Plaintiffs' new requests are necessary. For example, Plaintiffs request that "in the daily report on Inbound Ballot processing scores," the Postal Service now identify "the absolute number of Inbound Ballots . . . for a given District that had an origination scan in the District, a destination scan in the District, or both." But Plaintiffs provide no explanation for how this data will be useful now. Suppose, as Plaintiffs hypothesized during the hearing, this data shows that there were delays in delivering certain ballots that had both an origination and destination scan within the same District. It is unclear what further relief the Court could issue based on this data, especially since the vast majority of ballot deadlines have now passed. Additionally, the request for additional coordination between postal plants and local BOEs is unnecessary. As the Postal Service has explained multiple times, it has issued guidance pursuant to which local facilities have already coordinated with BOEs. Plaintiffs fail to show that pre-existing coordination is insufficient, and that further monitoring is necessary. And while Plaintiffs suggest that such data will be useful in measuring the Postal Service's compliance with this Court's November 3 order, it would neither show (1) whether such ballots were in the USPS facility at the

relevant mid-afternoon hour, a necessary premise for Plaintiffs' argument, nor (2) would it illustrate the Postal Service's compliance, given that, as Defendants have explained, sweeps were in process at all the relevant facilities throughout the day on Election Day. Additionally, Plaintiffs also note that these requests may produce evidence relevant to their claims. But how? This evidence will not show that there were any delays attributable to late trips or extra trips, or any other particular policy identified in their complaint. It will speak only to general delays.

Second, Plaintiffs' request is burdensome. Assembling any new data imposes a new burden, since it consumes critical resources from key personnel who must gather the data, address any glitches, and then address Plaintiffs' inevitable follow-up questions. Additionally, Plaintiffs' request for an order requiring the Postal Service to document additional coordination with BOEs is uniquely burdensome. This provisions states that "Plant managers and district managers jointly overseeing USPS processing facilities that serve Alaska, Illinois, Iowa, Maryland, Mississippi, North Dakota, Ohio, and West Virginia shall coordinate with all local Boards of Elections . . . in those states to deliver all ballots to the Local Boards before the relevant extended state ballot receipt deadline," any arrangements with local Boards of Elections must contain certain enumerated elements, and the Postal Service Headquarters must then canvass each and every covered postal plant, memorialize its unique arrangement with a local BOE, and then report the results to Plaintiffs and the Court Furthermore, collecting information on any new arrangement would also be a time-consuming task, since again, the Postal Service would have to coordinate with multiple "Plant managers and district managers." There is little justification for imposing this type of requirement at this late stage – and certainly not with respect to nine states, where such detailed information must be consolidated and gathered largely over a weekend.

Third, this request bears no relationship to the legal theories in Plaintiffs' Complaint. Plaintiffs' claims relate to mail delays caused by a discrete set of alleged Postal Service policy changes involving, among other things, overtime and the alleged ban on extra and late trips. They do not challenge any and all deficiencies in Postal Service performance, and they certainly do not challenge potential inadequacies in arrangements between postal plants and local BOEs. Plaintiffs' broad data request concerning potentially undelivered ballots across the country has no material connection to their narrow claim that USPS unlawfully adopted certain policy changes that created mail delays.

For these reasons, the Court should decline to issue paragraphs 3-5 of Plaintiffs' Proposed Order. To the extent the Court is inclined to issue Plaintiffs' Proposed Order, at least in part, the Court should at a minimum decline to issue paragraphs 4-5, or require Plaintiffs to amend paragraph 4 to contain a more limited list of States based on some evidentiary showing that there are ballot delays in those States due to inadequate arrangements between postal plants and local BOEs.

Dated:	November 6, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ERIC WOMACK
Assistant Branch Director, Federal Programs Branch

*/s/* Kuntal Cholera
KUNTAL V. CHOLERA
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW

Washington, D.C. 20005
kuntal.cholera@usdoj.gov

*Attorneys for Defendants*