# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

VOTE FORWARD, *et al.*,

        Plaintiffs,

    v.

LOUIS DEJOY, *et al.*,

        Defendants.

Civil Docket No. 20-cv-2405 (EGS)

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 1

LEGAL STANDARD................................................................................................ 3

ARGUMENT ............................................................................................................ 3

I.      THIS COURT LACKS JURISDICTION BECAUSE THIS CASE IS MOOT. ................ 3

      1.      Plaintiffs No Longer Have an Ongoing, Redressable Injury. ................................. 4

      2.      At a Minimum, Plaintiffs' Right to Vote Claim Is Moot........................................ 9

      3.      Plaintiffs' Claims Are Not Capable of Repetition Yet Evading Review................ 9

CONCLUSION......................................................................................................... 12

i

## TABLE OF AUTHORITIES

**CASES**

*Am. Fed'n of Gov't Emps. v. Rivlin*,
  995 F. Supp. 165 (D.D.C. 1998) ........................................................................ 10

*Arizonans for Official English Language v. Arizona*,
  520 U.S. 43 (1997) ........................................................................................... 3

*Chamber of Commerce of U.S. v. EPA*,
  642 F.3d 192 (D.C. Cir. 2011) ......................................................................... 4

*Clarke v. United States*,
  915 F.2d 699 (D.C. Cir. 1990) ......................................................................... 4

*Dunn v. Blumstein*,
  405 U.S. 330 (1972) ......................................................................................... 11

*Equal Rights Ctr. v. Post Properties, Inc.*,
  633 F.3d 1136 (D.C. Cir. 2011) ....................................................................... 8

*Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*,
  28 F.3d 1268 (D.C. Cir. 1994) ......................................................................... 6

*Fleming v. Gutierrez*,
  785 F.3d 442 (10th Cir. 2015) ......................................................................... 6

*Food & Water Watch v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015) ..................................................................... 8, 9

*Freedom Party v. N.Y. Bd. of Elections*,
  77 F.3d 660 (2d Cir. 1996) ............................................................................. 6

*Fund for Animals v. Mainella*,
  335 F. Supp. 2d 19 (D.D.C. 2004) ................................................................. 11

*Genesis HealthCare Corp. v. Symczyk*,
  569 U.S. 66 (2013) ....................................................................................... 3, 4

*Hall v. Beals*,
  396 U.S. 45 (1969) ........................................................................................... 6

*Herron for Congress v. FEC*,
  903 F. Supp. 2d 9 (D.D.C. 2012) ................................................................. 6, 11

*Honeywell Int'l, Inc. v. NRC*,
  628 F.3d 568 (D.C. Cir. 2010) ............................................................................. 10

*Jerome Stevens Pharm., Inc. v. FDA*,
  402 F.3d 1249 (D.C. Cir. 2005) .............................................................................. 3

*Kingdomware Techs., Inc. v. United States*,
  136 S. Ct. 1969 (2016) ........................................................................................ 10

*League of Women Voters of U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) .................................................................................... 6

*Lemon v. Geren*,
  514 F.3d 1312 (D.C. Cir. 2008) .............................................................................. 9

*Lewis v. Continental Bank Corp.*,
  494 U.S. 472 (1990) ............................................................................................... 4

*Liu v. I.N.S.*,
  274 F.3d 533 (D.C. Cir. 2001) ................................................................................ 4

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................... 3, 4

*Nat'l Treasury Emps. Union v. United States*,
  101 F.3d 1423 (D.C. Cir. 1996) .............................................................................. 6

*Noble v. Nat'l Ass'n of Letter Carriers, AFL-CIO*,
  285 F. Supp. 3d 128 (D.D.C. 2018) .................................................................... 9, 10

*People for Ethical Treatment of Animals, Inc. v. Gittens*,
  396 F.3d 416 (D.C. Cir. 2005) .............................................................................. 11

*People for the Ethical Treatment of Animals, Inc. ("PETA") v. U.S. Fish & Wildlife Serv.*,
  59 F. Supp. 3d 91 (D.D.C. 2014) ............................................................................ 4

*Pharmachemie B.V. v. Barr Labs.*,
  276 F.3d 627 (D.C. Cir. 2002) .............................................................................. 11

*Preiser v. Newkirk*,
  422 U.S. 395 (1975) ............................................................................................... 4

*Pub. Citizen Health Research Grp. v. Pizzella*,
  No. CV 18-1729 (TJK), 2019 WL 4711457 (D.D.C. Sept. 26, 2019) ............................... 10, 11

*Renne v. Geary*,
  501 U.S. 312 (1991) ............................................................................................... 3

*Sierra Club v. FERC*,
   827 F.3d 59 (D.C. Cir. 2016) ............................................................................ 6

*Spann v. Colonial Village, Inc.*,
   899 F.2d 24 (D.C. Cir. 1990) ............................................................................ 8

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ............................................................................... 4, 5

*United States v. Sanchez-Gomez*,
   138 S. Ct. 1532 (2018) ............................................................................... 9, 10

*Virginians Against a Corrupt Cong. v. Moran*,
   No. 92-5498, 1993 WL 260710 (D.C. Cir. June 29, 1993)...................................... 9

*WildEarth Guardians v. Jewell*,
   738 F.3d 298 (D.C. Cir. 2013) ........................................................................... 6

*Wright v. Foreign Serv. Grievance Bd.*,
   503 F. Supp. 2d 163 (D.D.C. 2007),
   *aff'd* No. 07-5328, 2008 WL 4068606 (D.C. Cir. Mar. 17, 2008)............................ 3

## FEDERAL RULES

Fed. R. Civ. P. 12(h)(3)...................................................................................... 3

## OTHER AUTHORITIES

13B Charles Alan Wright & Arthur R. Miller,
   *Fed. Prac. & Prod* § 3533 (3d ed. 2014) .......................................................... 4

## INTRODUCTION

Plaintiffs filed this case to "ensure the on-time delivery of mail ballots," Am. Compl. ¶ 4, ECF No. 15, during "[a] public health crisis" "when a presidential election hangs in the balance," *id.* ¶ 3.  They premised their Article III standing on potential delays in election mail, or on their organizations' need to educate the public about the importance of timely mailing ballots in preparation for the November 3 General Election.  And they moved—and obtained—a preliminary injunction based on the need "to ensure the timely delivery of election mail" before that election. Mem. Supp. Prelim. Inj., at 2, ECF No. 16-1.

The 2020 election has now come and gone, and Plaintiffs' alleged injuries, as well as their lawsuit, are accordingly moot.   The named plaintiffs fall into two general categories: (1) individuals who alleged an intent to vote by mail in the November 2020 election, and (2) organizations who alleged a need to educate their members (or the broader public) about the importance of timely mail-in voting.  The individual plaintiffs have now voted, or the time for voting has passed.   And the organizational plaintiffs have likewise already engaged in any educational activities in preparation for the election.  This Court cannot now provide any additional relief that would address those allegations or remedy the purported injuries.  Accordingly, this Court should dismiss this lawsuit as moot.

## BACKGROUND

Plaintiffs, a group of individuals and organizations, filed suit in August 2020, seeking to overturn policies that had allegedly "undermined USPS's ability to ensure the on-time delivery of mail ballots." Am. Compl. ¶ 4.  The ten individual plaintiffs are all individual voters who planned to vote this past November, but feared their ballots would not be delivered on time.  *See id.* ¶¶ 13-22.  The four organizational plaintiffs alleged that they would have to divert organizational

1

resources in order to educate the public about voting-by-mail. *See id.* ¶¶ 12, 23-25. Those activities—and the increase in voting-by-mail that formed the core of Plaintiffs' suit—was based on the ongoing COVID-19 pandemic, s*ee, e.g.*, *id.* ¶ 35, where, at the time the suit was filed, "[t]here [was] currently no approved medication or vaccine," *id.* ¶ 30. Plaintiffs claimed that the United States Postal Service ("USPS") had violated their constitutional right to vote, as well as 39 U.S.C. § 3661's requirement that USPS seek an advisory opinion from the Postal Regulatory Commission under certain circumstances. Am. Compl. ¶¶ 159-180.

On September 8, 2020, Plaintiffs sought a preliminary injunction premised solely on their right to vote in the November 2020 election. *See* Mot. Prelim. Inj., ECF No. 16; Mem. Supp. Prelim. Inj., ECF No. 16-1. They complained about "[t]he impending flood of mail-in ballots this fall [that] heightens the need for USPS to ensure the timely delivery of election mail," Mem. Supp. Prelim. Inj., at 2, and explicitly based their need for an injunction on the fear that USPS policies would "effectively disenfranchise individual voters," *id.* at 30.

Several weeks later, this Court granted Plaintiffs' motion for a preliminary injunction, finding that Plaintiffs had demonstrated irreparable harm from the possibility that their ability to vote in the general election would be compromised, as well as a likelihood of success on their "right to vote" claim. *See* Mem. Op., ECF No. 32. Unsurprisingly, in light of Plaintiffs' arguments, this Court's opinion was also focused on the General Election: the Court found that the individual plaintiffs have "provided ample evidence showing that, due to delays in the delivery of mail, there is a substantial risk that Plaintiffs will suffer an undue burden on their constitutional right to vote." *Id.* at 37-38. And the Court found that it was in the public interest to issue an injunction because "the public interest . . . favors permitting as many qualified voters to vote as possible." *Id.* at 43 (internal citation omitted).

In the lead up to the General Election, this Court held daily hearings, and issued a number of orders focused on ensuring that ballots were timely delivered before and immediately after November 3, 2020.  *See, e.g.*, ECF Nos. 39-113.  Defendants appealed this Court's preliminary injunction order on November 27, 2020.  *See* Not. of Appeal, ECF No. 126.

## LEGAL STANDARD

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  The plaintiff bears the burden of demonstrating subject-matter jurisdiction.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  Courts should "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (citations omitted).  "Although a court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007), *aff'd* No. 07-5328, 2008 WL 4068606 (D.C. Cir. Mar. 17, 2008) (internal citations omitted).  The Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."  *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## ARGUMENT

### I.   THIS COURT LACKS JURISDICTION BECAUSE THIS CASE IS MOOT.

The Court should dismiss Plaintiffs' complaint because this case is moot.  "An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 71–72 (2013) (quoting *Arizonans for Official English Language v. Arizona*, 520 U.S. 43, 67 (1997)).  "If an intervening circumstance deprives

the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990)).  Thus, "'[i]t is not enough that the initial requirements of standing and ripeness have been satisfied; the suit must remain alive throughout the course of litigation, to the moment of final appellate disposition.'" *People for the Ethical Treatment of Animals, Inc. ("PETA") v. U.S. Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 95 (D.D.C. 2014) (quoting 13B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Prod* § 3533 (3d ed. 2014)); *see also Chamber of Commerce of U.S. v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011) ("[E]ven where litigation poses a live controversy when filed," the Court "must dismiss a case as moot if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.") (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990)).  This doctrine of mootness "reflect[s] and enforce[s]" Article III's limitation of federal jurisdiction to "cases and controversies" under which "federal courts are without authority 'to render advisory opinions or to decide questions that cannot affect the rights of litigants in the case before them.'" *Chamber of Commerce*, 642 F.3d at 199 (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

### 1. Plaintiffs No Longer Have an Ongoing, Redressable Injury.

Under a straightforward application of these jurisdictional principles, this case is moot. Because the November election has passed, and because purported injuries related to that Election were the basis for their claims, Plaintiffs can no longer satisfy any of the requirements of Article III standing.  Plaintiffs cannot establish an "actual or imminent" injury that the Court can redress through this lawsuit. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560) (1992); *see Liu v. I.N.S.*, 274 F.3d 533, 535 (D.C. Cir. 2001) ("To

save a case from mootness" plaintiffs' alleged "injury must be more than a remote possibility, not conjectural, more than speculative." (citation and internal quotation marks omitted)).

Turning first to the individual plaintiffs, all ten alleged injuries are based on the November election, and a fear that either (1) their ballot would be delayed, or (2) they will be forced to vote in person and subject themselves or their families to the risk of contracting COVID-19. *See, e.g.*, Am. Compl. ¶ 13, ECF No. 15 (Plaintiff Carrel "intends to vote by mail in the general election"); ¶ 14 (Plaintiff Bolan "is voting in mail in the general election"); ¶ 15 (Plaintiff Thompson "plans to vote by mail close to Election Day"); ¶ 16 (Plaintiff Hunter "plans to vote by mail in the general election"); ¶ 17 (Plaintiff Datta "plans to vote by mail"); ¶ 18 (Plaintiff Flores-deMarchi "plans to vote by mail") ¶ 19; (Plaintiffs Young and Roberson "plan to vote by mail"); ¶ 20 (Plaintiff Immonen "intends to vote by mail"); ¶ 21 (Plaintiff Montgomery "plans to vote by mail"); ¶ 22 (Plaintiff Morrison "intends to vote by mail in the upcoming general election"). These Plaintiffs therefore sought prospective relief based solely on an alleged injury of a potential inability to vote by mail in the November 2020 election.

But the opportunity to vote in that election has come and gone. Accordingly, whether or not Plaintiffs had voted, and whether or not those votes were timely delivered to the relevant state or local election authorities, there would be no relief this Court could provide that could redress allegations of harm related to the November 2020 election.

For similar reasons, Plaintiffs also cannot establish the elements of causation or redressability. *See Spokeo*, 136 S. Ct. at 1548. Plaintiffs cannot show that they will suffer any certain, imminent injury traceable to the challenged conduct of Defendants, or that any injury could be redressed by a favorable judicial decision. Indeed, precisely because claims such as Plaintiffs' are not redressable after an election, numerous courts have dismissed such claims as moot after

the election at issue has taken place.  *See e.g.*, *Hall v. Beals*, 396 U.S. 45, 48 (1969) (per curiam) (case challenging state residency requirement to vote in 1968 election was moot after the election because it was "impossible to grant [plaintiffs] the relief they sought in the District Court"); *Fleming v. Gutierrez*, 785 F.3d 442, 445 (10th Cir. 2015) (challenge to election procedures was moot after election "because the election has passed and [the court] cannot grant any effective relief"); *Freedom Party v. N.Y. Bd. of Elections*, 77 F.3d 660, 662 (2d Cir. 1996) ("After the special election was held, the controversy became moot."); *Herron for Congress v. FEC*, 903 F. Supp. 2d 9, 13 (D.D.C. 2012) ("Given the irreversibility of the 2010 election, it falls on Herron to demonstrate that his claim is not moot.").

The organizational plaintiffs fare no better.  "An organization is harmed if the 'actions taken by [the defendant] have 'perceptively impaired' the [organization's] programs. If so, the organization must also then show that the defendant's actions 'directly conflict with the organization's mission.'"  *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 8 (D.C. Cir. 2016) (quoting, first, *Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994), and, second, *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996)).[1]  To the extent the organizational plaintiffs have identified an injury-in-fact, those injuries stem entirely from election-related concerns that have now been mooted.

---

[1] While an organization can have standing either on its own behalf (organizational standing) or on behalf of its members (associational standing), "[a]n organization has associational standing to bring suit on its members' behalf" only when "at least one of its members would have standing to sue in his or her own right."  *Sierra Club v. FERC*, 827 F.3d 59, 65 (D.C. Cir. 2016) (quoting *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013)).  Here, none of the organizational plaintiffs identify specific members, much less explain how their members would independently have standing, and thus these organizational plaintiffs rely solely on organizational injury to establish and maintain Article III jurisdiction.

In the operative Complaint, Plaintiff Vote Forward describes itself as an organization that encourages individuals to vote, and notes that its "overall 2020 get-out-the-vote ("GOTV") goal is to send 10 million letters in late October," and that it "has had to redirect significant organizational resources to the work of responding to a deluge of questions and concerns from [its] volunteers about the impact of those delays on their efforts [to send such letters.]"  Am. Compl. ¶ 12.  It also notes that it "has also launched two entirely new programs to understand the scope of the current mail delays, and to investigate their likely impact on the efficacy of the [get-out-the-vote] program."  *Id.*  All of these activities—and the alleged diversion of resources that are required to demonstrate organizational standing—were in preparation for the 2020 general election.  Indeed, this Court, in determining in September 2020 that Vote Forward was likely able to establish standing, focused exclusively on its Election Day activities: activities that have now been superseded and rendered moot by Election Day itself.  *See* Mem. Op., at 11-14, ECF No. 32. To the extent those alleged injuries were not resolved by the Court's preliminary injunction order, they can no longer be remedied through any prospective relief.

The same is true for the other organizational plaintiffs.  Plaintiff Colorado Organization for Latina Opportunity and Reproductive Rights, for example, alleges that it has devoted extra organizational resources "to ensure its members and communities are voting early so their ballots are received in a timely manner."  Am. Comp. ¶ 24.  Plaintiff Padres & Jóvenes Unidos follows suit, alleging that the organization has had "to redirect significant organizational resources to inform members about how to effectuate their right to vote amidst the disruptions and delays in mail delivery."  *Id.* ¶ 25.  Given the passing of the November 2020 election, these purported voting-related injuries no longer suffice, nor, of course, can this Court redress any election-related injury.

Along similar lines, Plaintiff Voces Unidas de las Montañas alleges that "the delays caused by USPS's policies *threaten* to frustrate Voces Unidas mission to elevate the voices of Latinos." Am. Compl. ¶ 23 (emphasis added).  This allegation was again based, if not entirely then at least in part, on "the right to vote."  *See id.*  However, to the extent Plaintiff Voces Unidas purports to allege some broader injury to the organization unrelated to the election, such an allegation would be insufficient to establish standing divorced from the right to vote.  The conclusory allegation that Defendants' actions have threatened plaintiff's "mission to elevate the voices of Latinos" is, at most, a "mere setback to [the organization's abstract] social interests," which does not suffice for standing purposes (as opposed to a "concrete and demonstrable injury to [the organization's] activities," which does).  *Equal Rights Ctr. v. Post Properties, Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011) (quoting *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990)).

Moreover, as this Circuit has made clear, an organization must also demonstrate that it has had to expend resources to redress the alleged harm such that its organizational activities have been impaired.  *See Food & Water Watch v. Vilsack*, 808 F.3d 905, 921 (D.C. Cir. 2015) ("Although [plaintiff] alleges that [it] will spend resources educating its members and the public about [defendants' activities], nothing in [plaintiff's] declaration indicates that [plaintiff's] organizational activities have been perceptibly impaired in any way.").  In this respect, Voces Unidas says only that it "*expects* to devote resources for additional education and outreach to this effort," which provides this Court with no basis to evaluate whether it has adequately alleged harm to the organization.  Am. Compl. ¶ 23.  In any event, the D.C. Circuit's "precedent makes clear that an organization's use of resources for . . . advocacy is not sufficient to give rise to an Article III injury."  *Food & Water Watch*, 808 F.3d at 919.  Nor does the fact that an organization "expend[s] resources to educate its members and others" establish an Article III injury, "unless

doing so subjects the organization to operational costs beyond those normally expended." *Id.* at 920 (internal citation omitted).

Accordingly, these claims, as with those of the other plaintiffs, are moot.

### 2. At a Minimum, Plaintiffs' Right to Vote Claim Is Moot.

Even if this Court concludes that there is some ongoing injury that could be redressed in this action, which there is not, it should still conclude that Count II of the Amended Complaint, which alleges that the Postal Service's past actions constituted an undue burden on the right to vote in violation of the U.S. Constitution, Am. Compl. ¶¶ 173-180, is moot.  This Count is explicitly and exclusively focused on the 2020 General Election. *See, e.g.*, *id.* ¶ 1 (noting that "this is no ordinary year"); ¶ 3 ("These safeguards are all the more important at this moment, when a presidential election hangs in the balance").

But that election has passed.  At the risk of repetition, "[a]lthough such claims may have presented a live controversy before the . . . vote, 'intervening events'—namely, the . . . vote "make it impossible to grant [plaintiffs' relief." *Noble v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 285 F. Supp. 3d 128, 133 (D.D.C. 2018) (quoting *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008)); *see also, e.g.*, *Virginians Against a Corrupt Cong. v. Moran*, No. 92-5498, 1993 WL 260710, at *1 (D.C. Cir. June 29, 1993) (per curiam) (granting motion to dismiss for mootness because [t]he passage into history of the 1992 election makes it impossible for this or any court to grant meaningful relief with respect to that election.").  Accordingly, at a minimum, this Count of the Amended Complaint must be dismissed.

### 3. Plaintiffs' Claims Are Not Capable of Repetition Yet Evading Review.

This case is not one that fits within the limited exception to mootness for a controversy that is "capable of repetition, yet evading review." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532,

1540 (2018) (quoting *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1971 (2016)).

Plaintiffs "bear[] the burden of showing [this] exception applies." *Noble*, 285 F. Supp. 3d at 132

(quoting *Honeywell Int'l, Inc. v. NRC*, 628 F.3d 568, 576 (D.C. Cir. 2010)). "A dispute qualifies

for that exception only 'if (1) the challenged action is in its duration too short to be fully litigated

prior to its cessation or expiration, and (2) there is a reasonable expectation that the same

complaining party will be subjected to the same action again.'" *Sanchez-Gomez*, 138 S. Ct. at 1540

(citation omitted). Neither requirement is satisfied here. There is no reason to believe any future

Postal Service policy changes would evade review. If Plaintiffs believe that such future changes

would impinge their right to vote in later elections, Plaintiffs may challenge those policies at that

time, just as they challenged the policies at issue here in time for the Court to grant relief before

the November election.

There is also no "reasonable expectation that the same complaining party will be subjected

to the same action again," as it is far too speculative to predict not only what the Postal Service's

policies will be at the time of future elections, but how those policies could potentially affect

Plaintiffs, especially considering that this year's election took place during an unprecedented

pandemic that resulted in millions of Americans voting by mail. *See, e.g. Am. Fed'n of Gov't

Emps. v. Rivlin*, 995 F. Supp. 165, 166 (D.D.C. 1998) (Sullivan, J.) (challenge to whether President

could require federal employees to work without compensation during budgetary impasse was

rendered moot by passage of budget; case did not fall under the "capable of repetition, but evading

review" exception because it was "entirely speculative for th[e] Court to . . . predict if, and when,

another lapse in appropriations may occur, . . . which . . . employees might be affected, and whether

employees will be required to work without compensation"), *aff'd*, No. 98-5045, 1998 WL 545417

(D.C. Cir. July 15, 1998); *see also Pub. Citizen Health Research Grp. v. Pizzella*, No. CV 18-1729

(TJK), 2019 WL 4711457, at *5 & n.4 (D.D.C. Sept. 26, 2019) (case did not fall under exception to mootness because there was no "non-speculative threat" that agency would take the same action in the future); *Fund for Animals v. Mainella*, 335 F. Supp. 2d 19, 24 (D.D.C. 2004) (same).

Indeed, in election cases in particular, a plaintiff must "submit evidence suggesting that their controversy is likely to recur," or, said differently, "a demonstrable probability that he will be 'subjected to the *same action* again.'" *Herron*, 903 F. Supp. 2d at 14 (quoting *Pharmachemie B.V. v. Barr Labs.*, 276 F.3d 627, 633 (D.C. Cir. 2002)). This occurs, for example, "when a candidate challenges an electoral regulation that 'remain[s] on the books,'" *id.* at 15 (quoting *Dunn v. Blumstein*, 405 U.S. 330, 333 (1972)), or when they challenge "events that are certain to accompany every election cycle, even if they are not written into law," such as presidential debates, *id.* But such future certainty is not present here.

"In general, courts must be wary of claims that are 'highly dependent upon a series of facts unlikely to be duplicated in the future.'" *Herron*, 903 F. Supp. 2d at 15 (citing *People for Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 424 (D.C. Cir. 2005)). Here, Plaintiffs would have to establish that (1) they are likely to vote by mail, or will serve those who are likely to vote by mail; (2) their need or desire to vote by mail is not based on or impacted by the COVID-19 pandemic, *see* Am. Compl. ¶ 32 (noting that "[a]s a result of the pandemic and its restrictions on in-person voting, the demand for mail-in voting—which has existed in the United States for decades—has skyrocketed"); (3) the Postal Service will take specific actions that will have a material and negative impact on delivery of ballots, and (4) that impact would continue through the next election. Plaintiffs have neither pled nor "submitted any evidence to suggest that these events will occur." *Herron*, 903 F. Supp. 2d at 15. Accordingly, there is no reason why the Court should not dismiss this case as moot.

## CONCLUSION

For the aforementioned reasons, this Court should grant Defendants' motion to dismiss.

Dated:  January 15, 2021

Respectfully submitted,

JENNIFER B. DICKEY
Acting Assistant Attorney General

ERIC R. WOMACK
Assistant Director, Federal Programs Branch

*/s/ Joseph E. Borson*
JOSEPH E. BORSON (Va. Bar No. 85519)
KUNTAL CHOLERA
ALEXIS ECHOLS
DENA M. ROTH
JOHN ROBINSON
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
(202) 514-1944
Joseph.Borson@usdoj.gov

*Attorneys for Defendants*